DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Director of the Nebraska Service Center in Lincoln, Nebraska. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The director of USCIS is a named defendant in the case Wu v. Gonzales, 07-03118, presently pending in the United States District Court for the Northern District of California. Plaintiff Jin Wu seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated.

3. Plaintiff is a citizen of the People's Republic of China who has been assigned alien registration number A97 362 870. She filed Form I-485, Application for Adjustment of Status, at the California Service Center on April 27, 2005. The application was assigned receipt number WAC-05-149-50046 and remains pending. Due to a realignment of Service Center workload, the application was transferred to the Nebraska Service Center on August 9, 2007, for completion of the

adjudication. Plaintiff and Co-plaintiff are represented before USCIS by an attorney of record in San Francisco, California, who has not withdrawn from his representation of the aliens before the agency. Plaintiff had previously filed a Form I-485 with USCIS on November 20, 2003 which was denied on June 22, 2004.

4. Co-plaintiff Chang Zhang is a derivative spouse of Plaintiff Jin Wu. His application for adjustment of status as a derivative of Ms. Wu was filed on April 27, 2005, and is also pending at the Nebraska Service Center. Mr. Zhang's case can't be adjudicated until Plaintiff Wu's case, as the principal worker's case, is completed. Co-plaintiff Zhang had previously filed a Form I-485 with USCIS on November 20, 2003 which was denied on June 22, 2004.

5. Plaintiff enjoys lawful nonimmigrant status in the United States as an H-1B temporary worker with authorization to remain in the United States and work for the petitioning nonimmigrant employer, Synopsys, Inc., through February 1, 2009. This status may be extended upon request by the employer, or Plaintiff may obtain a work permit, based on her pending adjustment application, to work for any U.S. employer.

6. Co-plaintiff enjoys lawful nonimmigrant status in his own right as an H-1B worker for his employer, Acellent Technologies, Inc., valid through July 1, 2009.

7. Plaintiff's adjustment of status application is based on a Form I-140 immigrant visa petition for alien worker filed on October 20, 2004, by Synopsys, Inc., on behalf of Plaintiff. The visa petition was approved April 6, 2005. The goal of the I-140 and I-485 filings are to obtain lawful permanent resident ("green card") status for Plaintiff and any qualified dependent spouse or child through Plaintiff's employment.

8. General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or whose spouse has adjusted status as such a beneficiary), is in lawful immigration status on the date the Form I-485 is filed, has a visa number immediately available under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

9. Plaintiff's application for adjustment of status is ready to be adjudicated except for her pending background and security check.

10. The attached Fact Sheet explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of Form I-485.

11. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S.

Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

12. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

13. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background

checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, USCIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

14. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff was fingerprinted, or her fingerprint return was refreshed electronically, on April 30, 2004; June 22, 2006; and November 5, 2007. Co-plaintiff was fingerprinted, or his fingerprint return was refreshed electronically, on April 17, 2004; June 22, 2006; and November 5, 2007. The rescheduling or refreshing of fingerprints is done to ensure that

the case is ready to be adjudicated once Plaintiff's name check clears.

15. The preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary. The refreshing of IBIS checks can be completed within minutes in most cases.

16. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. During the initial submission period of December 2002 and January 2003, USCIS submitted almost 3 million names to the FBI.

17. Delays in adjudication caused by pending FBI name checks are lengthy in some cases. As of November 21, 2007, USCIS reported 316,420 FBI name check cases pending, with 54,639 FBI name checks pending more than 24 months.

18. Plaintiff's name check request was electronically submitted to the FBI on November 26, 2003, less than one week after the first Form I-485 was filed. FBI acknowledged receipt of the name check on December 3, 2003. The name check remains pending. Denial of the underlying Form I-485 for cause does not affect the

FBI's on-going processing of the name check request. Co-plaintiff's name check request was submitted to the FBI on November 26, 2003, and was completed on August 7, 2007. However, his derivative spouse case can't be adjudicated until Plaintiff's case, as the principal worker, is completed.

19. There are five USCIS regional Service or Benefit Centers throughout the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction, and/or exclusive nationwide jurisdiction over other types of applications. These Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews. Employment-based adjustment of status cases like Plaintiff's are handled at the Nebraska and Texas Service Centers.

20. During fiscal year 2007 the Nebraska Service Center completed adjudication on 919,966 applications and petitions.

21. The Nebraska Service Center currently has approximately 187,930 employment-based Form I-485 adjustment of status cases pending; 70,579 of those pending employment-based cases are awaiting completion of FBI name checks.

22. Cases at the Nebraska Service Center in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Plaintiff's FBI name check is pending. A response is required from the FBI before the case can be adjudicated.

23. Service Centers have a process for expediting processing of certain applications and petitions. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a case, this action comes at the expense of other name check cases, many of which have been pending since December 2002, because FBI would have fewer resources with which to work the other pending cases. USCIS is currently limited in the number of expedite requests that can be made to the FBI each week, and there is a backlog even in submitting the expedite requests for cases that have been deemed to meet expedite criteria.

24. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in cases at USCIS's discretion for military deployment, age-out cases and applications affected by sunset provisions, significant and compelling reasons such as critical medical conditions, loss of social security benefits or other subsistence, severe financial loss, extreme emergent situation, humanitarian situation, nonprofit status of requesting organization in furtherance of the cultural and social interest of the United States, Department of Defense/National Interest requests from official U.S. government entity, USCIS error, or compelling interest of USCIS.

25. Expedite requests are determined on a case-by-case basis and may be granted in the exercise of discretion. Plaintiff states in her complaint that she wishes to have her green card quickly so that she doesn't have to pay for a work permit or travel document anymore. She would also like to accrue time for naturalization. These are common reasons for an alien to desire lawful

permanent resident status and do not generally, as a single factor, constitute special circumstances that would justify emergency or expedited processing. Other common reasons generally found not to constitute special circumstances include a desire for "peace of mind" and the inability of non-lawful permanent residents or non-U.S. citizens to: petition for alien relatives, accrue residence time for naturalization, work and travel without special permission, get grant funds for research, apply for desirable jobs, qualify for scholarships or fellowships, or get in-state tuition for self, spouse or dependents.

26. Another common factor in the many mandamus lawsuits filed against USCIS involving pending FBI name checks is the plaintiffs' claim that they made repeated status inquiries about their case to USCIS, FBI, Congress, and the White House. While multiple status inquiries show the applicants' frustration with the pace of the processing of their applications, the inquiries, and mandamus actions, increase the workload of the FBI and USCIS, rather than having the effect of faster or special treatment of the subject applications. USCIS neither tracks nor records customer service inquiries in the administrative record.

27. Generally, applicants for adjustment of status may apply for employment authorization documents and advance parole travel authorizations, renewable on an annual basis upon application. Plaintiff and Co-plaintiff currently hold employment authorization documents valid for work with any U.S. employer valid through June 6, 2008. Plaintiff and Co-plaintiff currently hold advance parole travel documents valid through June 11, 2008.

28. The Nebraska Service Center is processing Ms. Wu's and Mr. Zhang's adjustment of status applications in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Lincoln, Nebraska,
on this 4th day of January, 2008.

F. Gerard Heinauer
Service Center Director
Nebraska Service Center