Justin Fok, Esq., CA Bar #242272
Law Offices of Jean D. Chen
2107 N. 1st Street, Suite 400
San Jose, CA 95131
Telephone: (408) 437-1788
Facsimile:  (408) 437-9788
Email: jfok@jclawoffice.com

Attorney for Plaintiffs
Jin Wu and Chang Zhang

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| **Jin Wu** and **Chang Zhang**, | Case No. C 07-3118 PVT |
| Plaintiffs, | **PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND PROPOSED ORDER** |
| v. | |
| **Alberto Gonzales**, United States Attorney General, U.S. Department of Justice; **Michael Chertoff**, Secretary of the Department of Homeland Security, **Emilio T. Gonzalez**, Director of United States Citizenship and Immigration Services | Date:  February 12, 2008<br>Time:  10:00 AM<br>Judge: Hon. Patricia V. Trumbull |
| Defendants. | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on February 12, 2008 at 10 a.m., before the Honorable Patricia V. Trumbull, Courtroom No.5, 280 South First Street, San Jose, California 95113, Plaintiffs Jin Wu and Chang Zhang, by their attorney, Justin Fok, will move this Court for an order granting summary judgment for Plaintiffs, pursuant to Feral Rule of Civil Procedure 56.

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT

1

Plaintiffs' motion is based on this notice, the points and authorities in support of this motion, the declarations of Jin Wu and Chang Zhang in support of this motion, the pleadings on file in this matter, and on such oral argument as the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs are applicants who seek to adjust their status to Legal Permanent Resident ("LPR") in the United States. This action arises out of Defendants' unreasonable delay in the adjudication of Plaintiffs' *I-485 Application to Register Permanent Residence or Adjust Status*.

On June 13, 2007, Plaintiffs filed this action seeking mandamus relief and declaratory judgment under 28 U.S.C. § 1361, and the Administrative Procedures Act (APA). Plaintiffs now seek summary judgment in this action and ask this Court to enter an order requiring Defendants' to adjudicate Plaintiffs' I-485 applications forthwith and to complete adjudication within 60 days of receiving the Court's order. Additionally, Plaintiffs ask that this Court grant reasonable attorney's fees pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412) as well as any other relief at law and in equity as justice may require.

### STATEMENT OF FACTS

Plaintiff Jin Wu is the primary applicant of an I-485, *Application to Register Permanent Residence or Adjust Status*, filed with the United States Citizenship and Immigration Services (USCIS) California Service Center (CSC).

Plaintiff Chang Zhang is the derivative applicant of an I-485, *Application to Register Permanent Residence or Adjust Status*, filed with the United States Citizenship and Immigration Services (USCIS) California Service Center.

Plaintiffs' applications and the filing fees, along with all supporting documentation, were filed with USCIS on April 27, 2005. *See* Complaint, Exhibit 1.

Plaintiffs initiated numerous inquiries to government officials, as well as to the USCIS regarding the status of their delayed I-485 applications. After each inquiry, Plaintiffs were informed that their cases were pending due to the FBI name check. *See* Complaint, Exhibits 3-6.

1   The USCIS (under the auspices of the Department of Homeland Security) still retains
2   jurisdiction over Plaintiffs' I-485 applications and these applications still remain unadjudicated.
3   It has now been over two and a half years since Plaintiffs first filed their I-485 applications with
4   the USCIS on April 27, 2005.

## ARGUMENT

6   Plaintiffs are entitled to relief under both the Mandamus Act, and the Administrative
7   Procedures Act ("APA"), in that they may seek to compel an agency to act within a reasonable
8   time on a non-discretionary duty. *See Wu v. Chertoff,* 2007 2007 WL 1223858 (N.D. Cal. 2007);
9   *Independence Mining Co. C. Babbitt*, 155 F.3d 502, at 207 (9th Cir. 1997)

### I. MANDAMUS JURISDICTION

11  The Mandamus Act, codified at 28 U.S.C. § 1361, can be used to compel an officer of the
12  United States to perform his/her duty. The act, in its entirety, states "The district courts shall
13  have original jurisdiction of any action in the nature of mandamus to compel an officer or
14  employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28
15  U.S.C. § 1361. While the court cannot force the agency to exercise its discretion in a particular
16  manner, the courts can use the Mandamus Act to compel the government to take action. A
17  successful Mandamus plaintiff must establish that: (1) he or she has a clear right to the relief
18  requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other
19  remedy is available. *Iddir v. INS*, 301 F.3d 492, at 499 (7th Cir. 2002).

**A. Plaintiffs have a clear and certain right to the relief requested**

21  An alien may apply for adjustment of status under 8 U.S.C. §1255(a), which reads in
22  pertinent part, "The status of an alien who was inspected and admitted or paroled into the United
23  States…may be adjusted by the Attorney General, in his discretion and under such regulations as
24  he may prescribe, to that of an alien lawfully admitted for permanent residence…" Section
25  245.2 of chapter 8 of the Code of Federal Regulations establishes the process by which an
26  applicant can apply to adjust his or her status to that of a Legal Permanent Resident. Section
27  245.2(a)(5) provides in pertinent part: "Decision-(i) General. The applicant shall be notified of
28  the decision of the director and, if the application is denied, the reasons for the denial." Courts

1  have interpreted this language as creating a non-discretionary duty to adjudicate immigrant
2  applications. *See Wu v. Chertoff*, 2007 WL 1223858 *3 (N.D.Cal.); *Quan v. Chertoff*, 2007 WL
3  1655601 at *3 (N.D .Cal. 2007)
4       Arising from this non-discretionary duty, courts have found that applicants who meet the
5  statutory requirements for an immigrant application have a clear and certain right for
6  adjudication. *See Wu v. Chertoff,* WL 1223858 *3. *See also Singh v. Still, 470 F.Supp.2d 1064,
7  1068 (N.D.Cal.2007)* ("petitioners whose applications for adjustment of status are properly
8  before the INS ... have a right, enforceable through a writ of mandamus, to have the applications
9  processed within a reasonable time."); *Eldeeb v. Chertoff*, 2007 WL 2209231 *18 (M.D.Fla.)
10 (Plaintiffs meet the criteria to apply for an I-485 application, and as a qualified applicant CIS had
11 a non-discretionary duty to act on the application.).  Thus, a qualified applicant who has properly
12 filed an I-485 application with the USCIS possesses a clear and certain right to the adjudication
13 of that application.
14      Defendants concede that the I-485 applications at issue in this case have been properly
15 filed and thus the Plaintiffs in this case have a clear and certain right to have their applications
16 processed.  *See* Answer ¶ 11.
17 **B.  The Plaintiffs are owed a mandatory duty**
18      In addition to showing that there is a clear and certain right to relief, Plaintiffs must also
19 demonstrate that Defendants owe them a mandatory duty to act.  While the courts cannot force a
20 particular discretionary act, courts can use mandamus jurisdiction to compel a government
21 agency to perform a non-discretionary duty if they have failed to take any action. *See Singh*, 470
22 F. Supp.2d at 1068 (Defendants conceding that there is mandatory duty to act on adjustment of
23 status applications and the Court finding that pertinent regulations support such a conclusion.)
24 *See also Gelfer v. Chertoff*, 2007 WL 902382 at *1 (N.D. Cal. 2007).
25      A majority of district courts, including the Northern District of California, have
26 interpreted the language of 8 U.S.C. §1255(a) to mean that while the Department of Homeland
27 Security ("DHS") has discretion over *how* to adjudicate an application, the decision as to
28 *whether* it must adjudicate is non-discretionary, thus creating a mandatory duty on the

1 Defendants to adjudicate the I-485 applications. *See Quan v. Chertoff*, 2007 WL 1655601 at *2;
2 *Razaq v. Poulos*, 2007 WL 61884 at *3; *Singh v. Still*, 470 F.Supp.2d 1064, at 1067 (N.D. Cal.
3 2007). *See also Yu v. Brown*, 36 F.Supp.2d 922, 932 (D.N.M.1999).

4 **C. No other remedy is available**

5 In order to prevail on an action in mandamus, Plaintiffs must also demonstrate that they
6 have exhausted their administrative remedies. Plaintiffs have made several inquires to the
7 USCIS and their Congressional Representative. *See* Complaint, Exhibits 3-6. Despite their
8 attempts to further the application process, Plaintiffs' applications are still pending after two and
9 a half years. Plaintiffs have no other remedy available to them other than to continue to wait for
10 the USCIS to act on their application, and "waiting for an agency to act cannot logically be an
11 adequate alternative to an order compelling the agency to act." *Fu v. Reno*, 2000 WL 1644490, at
12 4 (N.D.Tex., 2000).

13 **II. APA JURISDICTION**

14 Plaintiffs are also entitled to relief under the APA and 28 U.S.C. §1331. The APA
15 mandates that, "…within a reasonable time, each agency shall proceed to conclude a matter
16 presented to it." 5 U.S.C. § 555(b). The APA allows for a district court to "compel agency
17 action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Although no time
18 frame is specifically defined by the APA, this Court has held that § 555(b) and § 706(1) of the
19 APA creates a reasonable time requirement for adjustment of status applications. *Aboushaban v.*
20 *Mueller*, 2006 WL 3041086, at *5 (N.D. Cal. 2006).

21 **A. Unreasonable Delay**

22 "What constitutes unreasonable delay in the context of immigration applications depends
23 to a great extent on the facts of the particular case." *Yu*, 36 F. Supp. 2d at 934. In this case, the
24 Defendants have indicated that the delay is due to the FBI name check. *See* Complaint, Exhibits
25 3, 6. While Plaintiffs understand the need for the FBI name check, Defendants fail to provide a
26 particularized reason as to why Plaintiffs' name checks have taken over two and a half years.
27 Without a particularized reason as to why the name check is taking such an inordinate amount of
28 time, this Court has found that both a two year delay to be unreasonable as a matter of law. *See*

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT

*Chao v. Gonzales* 2007 WL 3022548 at *6 (N.D.Cal., October 15, 2007 (delay of two years is unreasonable as a matter of law).

**B. Taking into account other factors in addition to the length of time in the delay**

When a statute is silent as to when a government agency must act, the Ninth Circuit has considered six factors in determining whether an agency delay is unreasonable. *Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, n. 11 (9th Cir. 2002) (using the six factor test from *Telecommunication Research and Action Center* (*TRAC*) *v. F. C.C.,* 242 U.S. App. D.C. 222, 750 F.2d 70 (D.C. Cir. 1984)). These six *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

When considering all six factors in addition to the length of the delay, this Court should find the DHS' delay to be unreasonable and grant Plaintiffs' Motion for Summary Judgment.

**1) The time agencies take to make decision must be governed by a rule of reason**

The Defendants offer no particularized reason as to why Plaintiffs' I-485 applications are suffering from such a long delay other than to give the generic and non-specific explanation that the security check remains pending with the FBI. *See* Complaint, Exhibits 3, 6. Even given the normal fluctuations inherent in application processing times, a delay of over two and a half years when the normal processing time is six to eight months breaks from the rule of reason.

**2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.**

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT

6

Congress has given its indication of the speed with which it expects DHS to complete adjudication of I-485 immigrant petitions.  In the year 2000, Congress enacted the Immigration Services and Infrastructure Improvement Act ("Act") to improve the efficiency and processing infrastructure of the immigration system.  At Section 202 of the Act entitled "Purposes" the Act explicitly states that "It is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application…" 8 U.S.C.A § 1571(b).  Thus, Congress could not have intended to permit potentially unlimited delays for the adjudication of the applications at issue and this Court should consider a six-month processing time as the touchstone in determining the "rule of reason."

**3) Delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake and the court should also take into account the nature and extent of the interests prejudiced by delay**. [1]

Delays in the immigration arena affect human health and welfare, and are thus less tolerable than those affecting only economic interests. *Ibrahim v. Chertoff,* 2007 WL 1558521, at *7 (S.D.Cal., 2007).  The delay in the processing of Plaintiffs' green cards is much more than a mere inconvenience; the delay significantly impacts the plaintiffs' professional and personal lives.

Plaintiff Zhang is currently employed by Acellent Technologies Inc., (Acellent) a hi-tech company involved in the design and delivery of advanced structural health diagnostic systems for the Defense and Aerospace industries. *See* Declaration of Chang Zhang ¶ 5-6.  Acellent routinely deals with "Controlled Technology" as defined by 22 CFR §120, which is restricted to United States citizens or legal permanent residents.  Plaintiff Zhang has been unable to participate in many projects at Acellent even though he is the most suitable person at his company because he is not yet a legal permanent resident.  For the past 2 and half years, this exclusion has detracted from his value as an employee at Acellent and has also burdened his employer. Declaration ¶ 5-6, Attachment B.

---

[1] The third factor overlaps significantly with the analysis of the fifth factor and can both be taken together in the context of immigration applications. *See Razaq v. Poulos,* 2007 WL 61884, at *7 (N.D.Cal., 2007).

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT

7

Plaintiff Zhang has also missed important business meetings and research meetings due to his unresolved immigration status. In June of 2007, Plaintiff Zhang was unable to attend an international business meeting in Germany because the USCIS did not approve his advance parole application in time.  Advance parole would not be necessary if the USCIS had adjudicated his I-485 within normal processing times. *See* Complaint, Exhibit 7.  Furthermore, although invited to the prestigious DARPA Macroelectronics meeting, Plaintiff Zhang was unable to attend some sessions because they were limited to legal permanent residents and U.S. citizens.  Again, the delay in the processing of Plaintiff's I-485 application has hindered his career development and Acellent's research efforts suffer. Declaration ¶ 7-11, Attachment B, C

Additionally, both of Plaintiffs wish to immediately apply for U.S. citizenship as soon as they are able.  However, because of the delay in the processing of their I-485s' Plaintiffs are unable to accrue the five-year residency required for those who wish to attain citizenship.  The two-year delay in this case has denied Plaintiffs nearly two years worth of the rights and privileges enjoyed by citizens of the United States. Declaration of Chang Zhang ¶ 13, Declaration of Jin Wu ¶ 7.  Plaintiffs also must renew their advance parole and employment authorization cards each year in order to travel and work legally, which places additional burden on Plaintiffs.  Declaration of Chang Zhang ¶ 8, Declaration of Jin Wu ¶ 5

> **4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, but the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.[2]**

Although the role of Defendants is pivotal to the security of the United States of America, they have given no individualized showing that the Plaintiffs pose any risk to national security. *Santillan v. Gonzales,* 388 F.Supp.2d 1065, at* 1082 (N.D.Cal., 2005) (Absent any such particularized showing, defendants' national security argument cannot excuse the administrative backlogs and bureaucratic delay for Plaintiffs' LPR status applications) *See also Singh v. Still,* 2006 WL 3898174 at *4 (mere invocation of national security is not enough to render agency

---

[2] The fourth and sixth *TRAC* factors also overlap and can be analyzed together.  *See Santillan v. Gonzales,* 388 F.Supp.2d 1065, at* 1084 (N.D.Cal., 2005).

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT

1  delay reasonable per se without further showing as to why Plaintiff requires greater scrutiny.)
2  Petitioners have contacted the USCIS in order to ascertain the progress of his FBI name check
3  and the USCIS never indicated that either Plaintiff Wu or Plaintiff Zhang posed any type of
4  national security risk.  Assuming for a moment that either Plaintiff Wu or Plaintiff Zhang does
5  indeed pose a yet undiscovered threat to national security, it would seem that the interests of
6  national security would be better served if the USCIS and the FBI expedited their name check
7  and completed the application investigation process as soon as possible in order to uncover the
8  nature of such a threat.  Allowing Plaintiffs' FBI name check and I-485 applications to languish
9  for over two and a half years does not appear to coincide with the national security priority that
10 the FBI name check is purported to serve.

## CONCLUSION

Plaintiffs have a clear right to relief under both the Mandamus Act and the Administrative Procedures Act.  Defendants have a clear non-discretionary duty to complete adjudication of Plaintiffs' I-485 applications within a reasonable time.  For these reasons, Plaintiffs respectfully request that the Court grant summary judgment in their favor.

Dated: January 10, 2008                                Respectfully Submitted,


_____/s/_____
Justin G. Fok
Attorney for Plaintiffs

Plaintiffs' Cross-Motion for Summary Judgment
Case No. C 07-3118 PVT